IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK SWAFFORD, on Behalf of Himself and All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>GENERALI US BRANCH and GENERALI GLOBAL ASSISTANCE, INC. d/b/a CSA TRAVEL PROTECTION,<br><br>                     Defendants. | Case No. _____<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Mark Swafford ("Plaintiff"), on behalf of himself and all others similarly situated, against Defendants Generali US Branch ("Generali") and Generali Global Assistance, Inc. d/b/a CSA Travel Protection ("CSA" or collectively, with Generali, the "Defendants") makes the following allegations against Defendants based on personal knowledge, as to his own actions, and on information and belief, as to other matters.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all persons who paid for and/or obtained a travel protection insurance policy from the Defendants, and who had their claim for travel reimbursements due to COVID-19, related cancellations, delays, or interruptions denied.

2. On or about February 19, 2019, Plaintiff booked travel to Hawaii, including a seven-night stay at a rental home initially scheduled to start on June 2, 2020, and end on June 9, 2020, but ultimately rescheduled by Plaintiff to start on June 9 and end on June 16, 2020 (the "Trip"). At or around that same time, Plaintiff applied for and was issued a travel protection

insurance policy, pursuant to which the Defendants agreed to, among other things, reimburse Plaintiff for costs associated with the cancellation or delay of the Trip.

3. Prior to the Trip, COVID-19 and governmental orders issued in connection therewith forced Plaintiff to cancel his Trip.

4. As a result of that cancellation, Plaintiff incurred certain costs, including all payments made for the Trip, for which he made a claim under the policy.

5. In contradiction of the plain terms and conditions of the policy, Defendants failed and refused to honor their contractual obligations to reimburse Plaintiff for the costs incurred due to the cancellation of Plaintiff's Trip.

6. Defendants have – on a uniform basis – failed and refused to reimburse their insureds under the policies for forfeited, prepaid, non-refundable, non-refunded, and unused payments incurred as a result of the cancellation, and/or delay of trips due to COVID-19 and/or associated governmental orders.

7. Plaintiff and members of the Class are entitled to reimbursements as contracted for under the policies.

## PARTIES

8. Plaintiff Mark Swafford is an adult individual and citizen of the State of North Carolina.

9. Defendant Generali is an insurance company with its principal place of business at 250 Greenwich Street, 33rd Floor, New York, New York 10007, and is a citizen of the State of New York. Generali is admitted or licensed to do business in all 50 states and the District of Columbia.

10. Defendant CSA provides insurance services and handles claims made under Generali's policies. CSA maintains its principal place of business at 4330 East-West Highway, Suite 1000, Bethesda, Maryland 20814, and is a citizen of the State of Maryland.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

12. This Court has personal jurisdiction over Defendants because, at all relevant times, they have engaged in substantial business activities, including the sale of policies, in New York. Defendants have, at all relevant times, transacted, solicited, and conducted business in New York through their employees, agents, and/or sales representatives, and derived substantial revenue from such business. Further, Defendant Generali maintains its principal place of business in this District.

13. Pursuant to 28 U.S.C. §1391(a)(2) and (3), venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendants are subject to the Court's personal jurisdiction in this District.

## FACTUAL BACKGROUND

### A. The Travel Insurance Policy

14. On or about February 19, 2019, Plaintiff made travel accommodations including the purchase of a seven-night stay at a rental home in Hawaii, which was initially scheduled to start on June 2, 2020, and end on June 9, 2020. The Trip was subsequently rescheduled by

3

Plaintiff, to start June 9, 2020, and end on June 16, 2020. The rental home for the Trip was prepaid by Plaintiff at a cost of $6,768.10.

15. At or about that same time, Plaintiff applied for and obtained a travel protection insurance policy, policy number 19050W9189 (the "Policy") administered by CSA and underwritten by Generali, to insure his Trip. The Policy is attached hereto as **Exhibit A**.

16. The Policy sets forth coverage for Trip Cancellation and provides, in relevant part, as follows:

> Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payment that you paid for your Trip, if you are prevented from taking your Trip due to one of the following unforeseen Covered Events that occur before departure on your Trip to you or your Traveling Companion, while your coverage is in effect under this Policy.

17. The Policy provides a list of Covered Events, one of which is for being "Quarantined."

18. The Policy defines the word "Quarantine" as the "enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."

19. The Policy does not define "enforced isolation." Without a provided definition, "enforced isolation" may reasonably mean to self-enforce, or be enforced by a third party.

20. The Policy also provides the following Covered Event:

> Your Accommodations at your destination made inaccessible due to fire, flood, volcano, earthquake, hurricane or other natural disaster. We will only pay benefits for losses occurring within 15 calendar days after the event renders the destination inaccessible. For the purpose of this coverage, inaccessible means your Accommodations can not be reached by your original mode of transportation. Benefits are not payable if the event occurs or if a hurricane is named prior to or on your Trip Cancellation Coverage Effective Date.

21. The Policy does not define "natural disaster." Without a provided definition, "natural disaster" may reasonably mean a declared federal disaster and/or national emergency, such as COVID-19.

4

22. The Trip Delay benefit in the Policy is described as follows:

If You are delayed on your Trip for 12 hours or more, we will reimburse you, up to the amount shown in the Schedule for reasonable additional expenses incurred by you for lodging Accommodations, meals, telephone calls, local transportation, and additional vehicle parking charges and additional pet kennel fees incurred due to the delay.

23. The Policy provides a list of events that cause or result in the Trip Delay. On that list of events is, among other things, "Quarantine" and "natural disaster."

24. The Maximum Benefit Amount under the Policy on the Schedule of Benefits is as follows:

| Coverage | Maximum Limit Per Reservation |
| --- | --- |
| **SCHEDULE OF COVERAGE** | |
| Trip Cancellation | Up to 100% of Trip Cost Insured* |
| Travel Delay Coverage ($150 Daily Limit Applies) | $600 |

* The maximum Trip Cost for this plan is $50,000.

25. Upon information and belief, the policies issued by the Defendants are uniform in their terms and coverage.

**B.   COVID-19 and Related Governmental Orders**

26. COVID-19 is a highly contagious airborne virus that has rapidly spread and continues to spread across the United States. The virus has been declared a pandemic by the World Health Organization ("WHO").

27. COVID-19 is a public health crisis that has profoundly affected all aspects of society, prompting various federal agencies and governmental authorities to issue orders and guidance designed to slow the pace at which the virus is transmitted.

28. On January 30, 2020, the WHO declared COVID-19 a Global Health Emergency.[1]

29. On February 29, 2020, the first death of COVID-19 was reported in the United States.[2]

30. On March 11, 2020, WHO announced that COVID-19 was categorized as a pandemic.[3]

31. In the midst of the emerging crisis, the Governor of the State of North Carolina, Roy Cooper, issued a Declaration of a State of Emergency for the State of North Carolina.[4]

32. On March 13, 2020, President Donald Trump declared the COVID-19 virus a National Emergency, which began on March 1, 2020.[5] The Federal Emergency Management System ("FEMA") reported that the President declared the ongoing COVID-19 pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to §501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act").[6]

---

[1] Andrew Joseph, *WHO declare coronavirus outbreak a global health emergency*, Jan. 30, 2020, https://www.statnews.com/2020/01/30/who-declares-coronavirus-outbreak-a-global-health-emergency/

[2] William Mansell and Erin Schumaker, *President Trump confirms 1st known death in US from coronavirus*, ABCNEWS, Feb. 29, 2020, https://abcnews.go.com/US/high-school-student-washington-latest-coronavirus-community-spread/story?id=69301655.

[3] *WHO Director-General's opening remarks at the media briefing on COVID-19*, Mar. 11 2020, https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[4] Declaration of a State of Emergency to Coordinate Response and Protective Actions to Prevent the Spread of COVID-19, N.C. Exec. Order No. 116 (Mar. 10, 2020), https://files.nc.gov/governor/documents/files/EO116-SOE-COVID-19.pdf.

[5] *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Mar. 13, 2020, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[6] News Release, COVID-19 Emergency Declaration, FEMA (Mar. 13, 2020), https://www.fema.gov/news-release/20200726/covid-19-emergency-declaration.

33. On March 25, 2020, President Donald Trump approved Governor Coopers request for a federal disaster declaration for the COVID-19 pandemic in the State of North Carolina.[7]

34. On March 27, 2020, Governor Cooper issued a Stay at Home Order[8], which required the individuals and residents of the State of North Carolina to stay at home unless for essential purposes and prohibited travel unless for essential activities. This prohibition was to remain in effect until April 30, 2020.

35. On April 23, 2020, Governor Cooper extended the Stay at Home Order until May 8, 2020.[9]

36. On May 5, 2020, Governor Cooper eased some of the restrictions placed on travel, which included allowing individuals to travel in certain instances, such as for work, or to travel between residences. Travel for leisure was not one of the permissible activities listed.[10]

37. On May 22, 2020, North Carolina moved to "Phase 2" of reopening.[11] Under Phase 2, the Stay at Home Order was lifted, but "North Carolinians are encouraged to limit non-essential travel[.]"[12] North Carolina remains in Phase 2.

---

[7] *North Carolina Receives Federal Disaster Declaration for COVID-19*, Mar. 26, 2020, https://www.ncdhhs.gov/news/press-releases/north-carolina-receives-federal-disaster-declaration-covid-19.

[8] Stay at Home Order and Strategic Directions for North Carolina in Response to Increasing COVID-19 Cases, N.C. Exec. Order No. 121, Mar. 27, 2020, https://files.nc.gov/governor/documents/files/EO121-Stay-at-Home-Order-text.pdf.

[9] Extending Stay at Home Order and Orders Limiting Mass Gatherings, Requiring Social Distancing, and Restricting Visitation at Long Term Care Facilities, N.C. Exec. Order No. 135, Apr. 23, 2020, https://files.nc.gov/governor/documents/files/EO135-Extensions.pdf.

[10] Easing Restrictions on Travel, Business Operations, and Mass Gatherings: Phase 1, N.C. Exec. Order No. 138, May 5, 2020, https://files.nc.gov/governor/documents/files/EO138-Phase-1.pdf.

[11] "When does Phase 2 go into place?", https://www.nc.gov/covid-19/staying-ahead-curve/phase-2-faqs#when-does-phase-2-go-into-place.

[12] "What actions are recommended to protect North Carolinians from contracting COVID-19 when they are not at home?", *Id.*

38. In response to COVID-19, on March 4, 2020, Governor David Ige ("Ige") of the State of Hawaii issued a Proclamation declaring a State of Emergency throughout the entire State of Hawaii.[13]

39. On March 21, 2020, Governor Ige issued a Second Supplementary Proclamation, stating, *inter alia*, "all persons entering the State of Hawai'i shall be subject to mandatory self-quarantine[.] . . . The period of self-quarantine shall begin from the time of entry into the State of Hawai'i and shall last 14 days[.]"[14] This proclamation was in effect during the scheduled Trip.

40. On April 1, 2020, President Trump approved Governor Ige's request for a federal disaster declaration for the COVID-19 pandemic in the State of Hawaii.[15]

41. The Centers for Disease Control and Prevention ("CDC") provides traveler guidance for travel during COVID-19.[16] In its guidance, the CDC warns "[t]ravel increases your chance of getting and spreading COVID-19. ***Staying home is the best way to protect yourself and others from COVID-19.***"[17] [Emphasis added.] This guidance was in effect during the scheduled Trip.

42. The Orders by the Governor of North Carolina and Governor of Hawaii, as well as the guidance from the CDC, amount to a "Quarantine" as defined in the Policy.

---

[13] Haw. Proclamation, Mar. 4, 2020, https://governor.hawaii.gov/wp-content/uploads/2020/03/2003020-GOV-Emergency-Proclamation_COVID-19.pdf.

[14] Haw. Second Supplementary Proclamation, Mar. 21, 2020, https://governor.hawaii.gov/wp-content/uploads/2020/03/2003152-ATG_Second-Supplementary-Proclamation-for-COVID-19-signed.pdf.

[15] *News Release: Major Disaster Declaration for Hawai'i as a Result of Covid-19*, Haw. Emergency Mgmt. Agency, Apr. 2, 2020, https://dod.hawaii.gov/hiema/news-release-major-disaster-declaration-for-hawaii-as-a-result-of-covid-19/.

[16] *Travel during the COVID-19 Pandemic*, Centers for Disease Control and Prevention, Aug. 26, 2020, https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html.

[17] *Id.*

8

43. Other states issued similar orders, proclamations, and travel restrictions, and the travel guidance from the CDC was available and applicable to residents of all states.

44. Further, all states and territories of the United States have been approved for "major disaster declarations" by President Trump.[18] The disaster declarations and the global impact of COVID-19 amount to a "natural disaster" under the Policy.

    C.    **Plaintiff's Claim for Benefits Under the Policy Were Wrongly Denied**

45. Plaintiff planned and paid for the Trip and Policy prior to the aforementioned proclamations, orders, and guidance being in effect.

46. In response to safety concerns and governmental orders regarding COVID-19, on or about May 22, 2020, Plaintiff cancelled his Trip.

47. Plaintiff's Trip was for recreational purposes and was not essential or otherwise necessary.

48. Plaintiff's Trip was cancelled due to being in quarantine, both self-enforced and enforced by governmental agencies.

49. As a result of such cancellation, Plaintiff incurred losses in the form of forfeited, prepaid, non-refundable, non-refunded, and unused payments.

50. In accordance with the terms and conditions of the Policy, Plaintiff submitted claim number 20055851-01 on or about May 22, 2020 (the "Claim"), to Defendants seeking reimbursement for forfeited, prepaid, non-refundable, non-refunded, and unused payments.

51. On or about June 2, 2020, CSA denied the Claim, stating "the cause of loss is not due to an event that is covered by the plan you purchased." A copy of the denial letter is attached hereto as **Exhibit B**.

---

[18] *COVID-19 Disaster Declarations*, FEMA, https://www.fema.gov/disasters/coronavirus/disaster-declarations.

52. The denial then states "the Coronavirus outbreak is considered a foreseeable event under any plans purchased on or after January 29, 2020. Therefore, you could be covered if you are diagnosed with Coronavirus, but foreseeable events such as becoming quarantined due to the Coronavirus will not be covered."

53. Defendants' reliance on the COVID-19 pandemic being a "foreseeable event" on or after January 29, 2020, is not applicable to Plaintiff's claim, since he purchased the Trip and Policy prior to January 29, 2020.  Regardless, Defendants' self-proclaimed limitation on their coverage obligations do not excuse their non-performance under the policies.

54. Despite expressly acknowledging in their denial that Plaintiff was "quarantined due to the Coronavirus," Defendants refuse to provide coverage under the Policy.

## CLASS ALLEGATIONS

55. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid for and/or obtained a travel protection policy from the Defendants, and whose claims for reimbursement were denied by or on behalf of Defendants after their trips were cancelled due to COVID-19, or COVID-19-related government stay at home orders, proclamations and/or guidance (the "Class").

56. Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors, and members of their immediate families, and any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

57. Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

58. The requirements of Rule 23(a)(1) have been met. The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to, the sales and transaction records that Defendants have access to and/or own.

59. The requirements of Rule 23(a)(2) have been met. There is a well-defined community of interest and there are common questions of fact and law affecting members of the Class. The questions of fact and law common to the Class predominate over questions, which may affect individual members and include the following:

(a) Whether such governmental orders, proclamations, guidance, and/or self-enforced isolation constitute – either individually or collectively – a "Quarantine" within the meaning of Defendants' policies;

(b) Whether the COVID-19 pandemic, disaster declarations, governmental orders, proclamations, and/or guidance, constitute – either individually or collectively – a "natural disaster" within the meaning of Defendants' policies;

(c) Whether Defendants' denials of the claims submitted by Plaintiff and the members of the Class were premeditated and the product of a coordinated effort to: (i) dissuade Plaintiff and the other members of the Class from submitting and/or pursuing claims under their policies; and/or (ii) to limit the Defendants' losses arising from such claims; and

(d) Whether Plaintiff and members of the Class are entitled to damages, punitive damages, costs, and/or attorneys' fees for Insurers' acts and conduct.

60.     The requirements of Rule 23(a)(3) have been met. Plaintiff's claims are typical of the claims of the members of the Class. The claims of Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct.

61.     Plaintiff and members of the Class were each customers of Defendants, each having applied for and purchased a travel insurance policy that is substantially identical in all material respects from the Defendants. Each likewise submitted a claim under their policies, and each such claim was denied on the basis that the claims were not covered under the policies.

62.     The requirements of Rule 23(a)(4) have been met. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class members are substantially identical, as explained above. While the aggregate damages that may be awarded to the members of the Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying this action as a class action will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendants' uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

## **FIRST CLAIM FOR RELIEF**

### DECLARATORY RELIEF
### (On Behalf of Plaintiff and Members of the Class)

63. Plaintiff incorporates by reference all factual allegations above as though the same were set forth here in their entirety.

64. Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and violate the terms of the federal and state statutes described herein. Plaintiff and members of the Class seek a judicial determination of an actual controversy regarding coverage for their forfeited, prepaid, non-refundable, non-refunded, and unused payments caused by a cancellation, delay, or interruption of their trips due to COVID-19.

65. The term "Quarantine" is used throughout the Policy and defined using the phrase "enforced isolation." Enforced isolation is not defined within the Policy. As such, it must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

66. In its own use and application of the word "Quarantine," Defendants expressly acknowledge that Plaintiff was "quarantined due to the Coronavirus" in their denial letter, yet refuse to provide coverage.

67. The phrase "natural disaster" is used throughout the Policy. "Natural disaster" is not defined within the Policy. As such, it must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

68. Based on the relevant Policy language and the facts, Plaintiff's and Class members' losses of forfeited, prepaid, non-refundable, non-refunded, and unused payments arise from a "Quarantine" and "natural disaster" within the meaning of the policies and – as such – trigger the Trip Delay benefits and Trip Cancellation benefits under the policies.

69. Declaratory relief from this Court will resolve the aforementioned controversy and dispute.

## SECOND CLAIM FOR RELIEF

### BREACH OF CONTRACT
(On Behalf of Plaintiff and Members of the Class)

70. Plaintiff incorporates by reference ¶¶1-62 hereof, as though the same were set forth here in their entirety.

71. The policies are a valid and binding contract for which Plaintiff and members of the Class paid material consideration in the form of a premium.

72. Pursuant to the terms and conditions of the policies, the forfeited, prepaid, non-refundable, non-refunded, and unused payments are specifically covered thereunder.

73. The Defendants have materially breached the policies by failing and refusing to reimburse Plaintiff and members of the Class for any of their forfeited, prepaid, non-refundable, non-refunded, and unused payments. The aforementioned material breaches have damaged, and will continue to damage, Plaintiff and members of the Class.

74. Plaintiff and members of the Class have performed all of their obligations under the policies, and any and all conditions precedent to coverage under the policies for the forfeited, prepaid, non-refundable, non-refunded, and unused payments have been satisfied, waived, or revoked, and/or the Defendants are estopped from enforcing them at this time.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendants as follows:

A.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.  For damages in an amount to be determined by the trier of fact;

D.  For an order of restitution and all other forms of equitable monetary relief;

E.  Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

F.  Awarding pre- and post-judgment interest on any amounts awarded; and,

G.  Awarding such other and further relief as may be just and proper

**JURY TRIAL DEMAND**

A jury trial is demanded on all claims so triable.

Dated:  August 31, 2020                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

  /s/ *Joseph P. Guglielmo*
Joseph P. Guglielmo
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6334
Facsimile:  (212) 223-6444
jguglielmo@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
ecomite@scott-scott.com

*Attorneys for Plaintiff Mark Swafford*